MOSLER SAFE & LOCK CO. *v.* MOSLER and others.[1]

*(Circuit Court, S. D. Ohio, W. D.* February 3, 1885.)

1. PATENTS—FIRE-PROOF SAFES—MOSLER'S ROUNDED CORNERS.
    Claims 1 and 2 of patent No. 281,640, for an angle-bar for safes, consisting of a right-angled iron bar, one of the sides of which is cut away (the cuts being curved and meeting a right-angled cut) leaving a curve facing the uncut side, whereby said uncut side may be bent to form a rounded corner, are void, said device not being new.

2. SAME—CLAIM FOR PROCESS OF BENDING ANGLE-IRONS VOID.
    Cutting an opening in one web of an angle-bar to permit the bending of the bar to an angle or curve was known and used before the date claimed by complainant's assignor, and determining the lines of the cuts and the shape of the opening by the use of a templet or pattern of flexible material is no exercise of the inventive faculty.

3. SAME—COMBINATION CLAIMS—AGGREGATION OF OLD PARTS.
    The combinations claimed in patent No. 273,585 and in claim 3 of patent No. 281,640, are composed of parts which are old, excepting the precise lines of cuts and shape of the openings, (which are not material,) and, as they produce a result which is the mere aggregate of separate contributions, are not patentable.

In Equity.

*Geo. J. Murray,* for complainant.

*James Moore,* for respondents.

SAGE, J. The plaintiff sues for infringement of three patents for improvements in fire-proof safes, granted to Moses Mosler, plaintiff's assignor, as follows:

(1) No. 273,585; application filed February 5, 1883; letters dated March 6, 1883. The object of this invention, as stated in the specification, is to provide an improved means of constructing the outer casing, so that the safe may be filled from the bottom. The front

---

[1] Reported by Harper & Blakemore, Esqs., of the Cincinnati bar.

and back frames of the safe are formed from angle-bars, which have one side cut away where the bends of the corners are to be made, and the uncut side bent around to close the joint in the corner, and form a frame with its outer corners rounded. The meeting joint at the bottom of the frame is overlapped by a short angle-piece, which is screwed or riveted to the frame uniting the joint. A sheet-metal cover is bent around the top sides and around the lower rounded corners of the frames. Upon each edge of this cover at the bottom of the safe, and between the angle-frames, are secured metal bars, which project beyond the edges of the cover, to form rests for the bottom plate. The safe is made with the customary sheet-metal box forming the interior receptacle, and secured to the cast-metal door-frame in the usual manner. The tops of the caster-frames conform to the curve of the rounded corners, and after the bottom plate is pushed into its place, the inner bolts, which secure the caster-frames, pass through the bottom plate, which they secure, and the angle-frames. The patentee does not claim the bent angle-frames, nor the safe composed of these frames, and the sheet-metal cover bent around them, (the same being shown and claimed by him in an application then pending,) but limits his claim to the combination, in a fire-proof safe, of the frames, the sheet-metal cover bent around the top sides and lower corners, with projecting metal bars, and removable bottom plate, substantially as described.

(2) No. 281,640. This patent differs from No. 273,585 in that a particular description is given, in the specification, of the cuts in the side of the angle-bar, where the bends are to be made; but the patentee specifies that the shape of the cut may be varied, it only being essential that sufficient metal be cut away on one side of the angle-bar to permit the other or uncut side to be bent; the cut nearest the uncut side being in the form of a curve or curves, so that when said uncut side is bent to form the corner it will bear upon and be supported by the curved end or portion of the cut, and thus be rounded by a curve similar to the curve of the cut.

The claims are as follows:

*First.* An angle-bar for safe-frames, consisting, substantially as before set forth, of a right-angled bar, one of the sides of which is cut away, leaving a curve facing the uncut side, whereby said uncut side may be bent to bear upon said curve to form a rounded corner; *second*, an angle bar for safe-frames, consisting, substantially as before set forth, of a right-angled iron bar, one of the sides of which is cut away, with curved cuts meeting a right-angled cut, whereby the uncut side may be bent to form rounded corners; *third*, in a safe, the combination of the front and back frames, formed of single bent angle bars having one side cut away to leave curved ends, upon which the uncut side is bent to form rounded corners, and a metal sheet, E, bent around and secured to said frames to form the top sides of the safe, substantially as described.

(3) No. 283,136, dated August 14, 1883. Application filed December 11, 1882. The claim is as follows:

"The herein described process of bending angle-irons, which consists in cutting away a portion of one web by a cut which severs the two webs at their junction for a distance equal to the arc of the corner to be bent, and removes sufficient of metal in front of the single part of the uncut web to permit the same to bend to the desired angle, and to insure the edges of the opening, meeting to form a close joint as the bar is bent, substantially as shown and described."

In the specification, the sides of the angle-bar are designated by the letters A and B, A representing the uncut web, and B the cut web. The outer opening of the cut, C, is made by lines at angles of 45 degrees to the edge of the web, so that when the bar is bent the edges of this opening meet each other in a true miter. The inner opening, D, which extends outward within converging curved lines from the angle of the bar to where it meets the opening, C, extending inward from the edge of B, and within converging lines, (the letter X suggesting the shape of the entire opening, excepting that the outer opening extends nearly to the angle of the bar,) has a dove-tailed shape, bounded by curved lines described from points upon the miter line and the face of the uncut web, A. The curved ends of the web, B, abut against the uncut side when the bar is bent, making a close joint.

The patentee states in the specification that "the shape of the opening or cut-away portion of web, B, may be varied at will so long as the meeting line or lines be not extended beyond the space bounded by the rounded corner, and the edge lines extended to web, A." The angle-bars cut out as described, it is stated in the specification, may be bent to the proper form by the machine represented by Fig. 6 in the accompanying drawings. In this, E represents a metal block having upwardly projecting sides, screw-tapped to receive clamping screw, F. The opposite corners of the block are rounded to fit the inner curve of the desired corner. G is a loose block of iron, between which and the sides of block, E, the uncut web, A, is clamped by screw, F; the other web, B, resting on the block; the cut-away part over the rounded corner. By force applied to the projecting end of the bar, it is bent around until the severed edges meet in a close joint.

The angle-bar herein shown, is not claimed, as it is the subject of a pending application.

The safes described in these patents are filled through the bottom opening with fire-proof cement. The bottom is then secured in place and the casters attached. The patentee states in specification forming part of letters No. 281,640 that before his invention safes were filled from the back, and that his safes "can be completely finished before the filling is put in. The filling adds greatly to the weight; much labor in handling is therefore saved." For the purposes of this suit, these three patents may be considered as one, containing all the claims involved. As counsel for complainant suggests, the claims are for separate and distinct, but not for independent inventions, at least so far as the manufacture of safes is concerned. They might

have been all included in one application had the patentee chosen to so present them.

The first and second claims in letters patent No. 281,640 are for an angle-bar for safes, consisting of a right-angled iron bar, one of the sides of which is cut away (the cuts being curved and meeting a right-angled cut) leaving a curve facing the uncut side, whereby said uncut side may be bent to form a rounded corner. The patentee states in the specification that he is aware "that it has been proposed to make protecting corner pieces for safes from angle-iron, from one side of which a triangular piece was cut out to permit the opposite side to bend." He also states that "the shape of the cut to permit the angle-bar to be bent to form rounded corners may be varied without departing from the principles of my invention," etc.

In the drawings accompanying the specification forming part of letters patent No. 283,136, Fig. 5 represents a templet of card-board, or thin sheet metal, which the patentee states he uses to determine about the shape and size of the notch or cut which it is necessary to make to admit of the bar being bent to any desired angle, and to make a corner of any desired curve. The templet is of the shape and size of a section of the angle-bar. One web is severed by a cut at right angles to its edge. The two webs are then severed at their junction for some distance upon each side of the cut, then by bending the web so that the cut edges will pass each other, the templet may be bent to any curve or angle desired, and the lines of the cuts required to make the proper shape of opening in angle-bars to be bent to the same curve or angle, marked and fixed upon.

Such use of the templet as a pattern is nothing new. It is clearly shown by the testimony that cutting an opening in one web of an angle-bar to permit the bending of the bar to an angle or curve, was known and used before the date claimed by complainants' assignor for his invention. Different shapes of cuts and openings are shown in exhibits put in evidence by respondents. Unless the precise cuts and shape of opening shown in the drawing attached to the specification forming part of the letters patent are patentable, the claims are worthless. But the patentee shows how, by the use of a pattern of flexible material,—an old method and familiar as the use of the carpenters' miter-box,—he determines the lines of the cuts and the shape of the opening. In this there is no exercise of the inventive faculty. It is only what would occur to a mechanic of ordinary skill. Moreover, if the precise lines of cuts and shape of opening shown in the drawings were patentable, the patentee does not, as we have seen, so limit his claim, but seeks to cover variations, which he says may be made without departing from the principle of his invention. Claims 1 and 2 in letters patent No. 281,640, and the claim in letters patent No. 283,136 are therefore adjudged invalid.

As to the combination claims, being the only claim in letters patent No. 273,585, and claim 3 in letters patent No. 281,640, the parts

are old, excepting only—and this is not material—that the precise lines of cuts, and the shape of the opening of the angle-bar, are not found in safes of prior manufacture. The sheet-metal cover is old. It is shown in respondent's exhibit, St. Louis safe. The bars, C, and lower removable plate, D, claimed in 273,585, are old. (See respondent's Exhibit A, and the deposition of John Hurst.) The safes in the manufacture of which they were used, were square cornered, as was then the fashion, but that is not material. When the angle-frames were bent the corners were round, and then heated and hammered upon both sides of the corners to make them square. Respondent's testimony also establishes that fire-proof safes were filled from the bottom as early as 1879 by the Cincinnati Safe & Lock Company, and in that year, probably also in 1878, by Hall's Safe & Lock Company. The complainant was the first to employ the combination claimed in the manufacture of round-cornered safes, but the change from square-cornered safes was only a change in form. The combination is nothing more than an aggregation, and falls by the application of the rulings in *Hailes* v. *Van Wormer*, 20 Wall. 368; *Reckendorfer* v. *Faber*, 92 U. S. 347, and in *Pickering* v. *McCullough*, 104 U. S. 318.

The bill is dismissed at complainants' costs.

---

# THE AVON.

(*District Court, N. D. Illinois.* January 5, 1885.)

1. COLLISION—VESSEL AT ANCHOR—LIGHTS—ADMIRALTY RULE 2.

The purpose of admiralty rule 2 was to have at least one bright white light set on a vessel at anchor so high as to be clearly visible from all directions, and which from its comparative height and the fact that it was stationary would indicate at once that it was upon a vessel at anchor; but having another light, even in the rigging or upon the hull or in the cabin windows, would not contradict such indication, or mislead an approaching vessel, and violate this rule.

2. SAME—EXHIBITION OF TORCH.

It is not necessary for a vessel at anchor to show a torch when its lights are properly set and burning, and an approaching vessel, by a vigilant and proper lookout, can see her without a torch.

3. SAME—LOOKOUT—COMPETENCY—USE OF NIGHT-GLASS.

4. SAME—STEAM-PROPELLER AND ANCHORED BARGE—NIGHT—LIGHTS—TORCH—LOOKOUT—FAULT—DAMAGES.

Upon examination of the evidence, *held*, that it is not shown, as claimed by the respondent, that the collision between the steam-propeller Avon in the night-time, on Lake Michigan, off the harbor of Milwaukee, with the barge Thomas A. Scott, while lying at anchor, was caused by the barge being anchored in an unsafe and improper place, or by a violation of admiralty rule 2 by her in displaying two lights, or by her failure to exhibit a torch when those