## HIEN *v.* BUHOUP.

PATENTS; INTERFERENCES; CHANGE OF FORM; PRIORITY; APPELLATE PRACTICE.

1. The modification of the pin used in a device for coupling cars from a round shank to a square shank with an oblong head, and the substitution of this modification in form for that put in use in the original invention is not such a departure from the original invention as to disentitle the inventor to the right of priority, as against a party who had conceived subsequently to the original invention, but not put into practical operation, a device similar in principle, but of different form and operation.

2. The change from a round-shanked pin with button head to a square-shanked pin with oblong head, to remedy a defect in operation, is simply a matter of variation of construction, not affecting the substance of the invention claimed, and could well be made by mere mechanical skill without the exercise of the faculty of invention.

3. Where the decisions of all the tribunals of the Patent Office are in favor of the claim made by one of the parties to an interference, it must be made clearly and affirmatively to appear that such decision is erroneous to justify this court in reversing it.

4. *Held,* that it being clearly shown that the appellee was the first to conceive the device in issue, and the first to reduce to practice, and also the first to apply for a patent, he was entitled to be declared the prior inventor.

No. 69.  Patent Appeals.  Submitted May 10, 1897.  Decided October 4, 1897.

HEARING on an appeal from a decision of the Commis-

sioner of Patents in an interference proceeding between rival applicants for a patent for improvements in car couplers. *Affirmed.*

*Messrs. Raymond & Omohundro* for the appellant.

*Mr. F. W. Ritter, Jr.,* for the appellee.

Mr. Chief Justice ALVEY delivered the opinion of the Court:

This appeal is from a decision of the Commissioner of .Patents, in a matter of interference between the application of the appellant, Phillip Hien, and that of the appellee, Harry C. Buhoup, for patents for certain alleged new and useful improvements in car couplers. The application of the appellant, Hien, was filed in the Patent Office April 23, 1895, being No. 546,872, and that of the appellee, Buhoup, was filed April 15, 1895, being No. 545,780.

The claim of the appellant was adjudged to interfere with the claim of the appellee, and the subject-matter of the interference was reduced to an issue and formulated thus:

"In a car coupler, the combination with a knuckle, its tail piece, and lock, of a movable pin or catch arranged back of the advanced position of the lock, and within the path of the tail piece of the knuckle; substantially as and for the purposes specified."

This issue of interference covers claim 5 of the application of the appellant, and is claim 5 of the application of the appellee. The question of priority thus raised in the Patent Office, as between the appellant and appellee, was adjudged by all the tribunals in that office to be with the appellee, Buhoup.

Hien has appealed to this court, and has assigned no less than twelve supposed errors in the rulings of the Patent Office; but the grounds so assigned for reversal may be reduced to three or four questions, and those mainly of fact, the principal question, that of priority of invention, being one of fact merely.

A considerable volume of testimony was taken, but Hien was the only witness examined in support of his claim to priority. There is some conflict between the testimony of Hien and the witnesses examined on the part of Buhoup, the appellee. Without, however, placing much reliance upon this conflict of evidence, the officials of the Patent Office seem to have had little or no difficulty in arriving at the conclusion that Buhoup was entitled to the priority of invention of the claim in issue.

As was said by the examiners-in-chief, the issue involved in the interference is not limited to any specific form of the movable pin or catch, which is the important feature of the issue, so far as this interference is concerned. The parties to the interference show specifically different forms of the generic device,—Buhoup's device being a gravity pin, shown in the. drawings as rectangular in cross-sections, though not restricted to such form in the specification, and Hien's device being a pivoted arm. There is no question but that the square-shanked gravity pin, with oblong head, of Buhoup is as much within the terms of the issue as the pivoted arm of Hien, and the round-shanked gravity pin, with button head, referred to in the evidence, is equally within the terms of the issue. In this construction of the specifications and issue, and the application of the evidence thereto, we entirely agree with the officials of the Patent Office. Indeed, we do not understand it to be seriously contended that the terms of the issue of interference are not sufficiently comprehensive to embrace the several forms of the device described in the specifications of the parties that is to say, the respective claims involved in the issue. The issue, as described in the brief of the appellant, and the operative action of the device of the issue, is stated as being a gravity pin which rides upon the locking-block when the couplers are coupled, and drops in front of and holds back the locking-block when the couplers are uncoupled,—this pin being located within the path of the

tail-piece of the knuckle, and provided with a head on its lower end to receive the blow of the tail-piece. The action of the parts in uncoupling the cars sets the parts of the coupler in position for automatic recoupling.

There is no ground for question but that Buhoup was the first to conceive the invention of the round-shank gravity pin and button head, and he reduced that invention to practice in October, 1894, after he had seen the model of the conception of the device in issue by Hien, and the subsequent modification of the pin from a round shank to a square shank, with an oblong head, and the substitution of this modification of form for that previously put in use, was not such departure from the original invention as to disentitle the inventor to the right of priority, as against a party who had conceived subsequently to the original invention, but not put into practical operation, a device of similar principle, but of a different form and operation from that of the original conception.

It is alleged by Hien that the conception of the invention claimed by him was in November, 1893, and that he made disclosure thereof to others, and had a model made about the first of December, 1893. The model was made and exhibited in the early part of December, 1893, though he has not alleged or shown in proof that he has ever reduced his invention to practical use. There would seem to be no doubt, on the proof that Hien's invention was not earlier than the last of November or the first of December, 1893; while, on the part of Buhoup, it is alleged that he conceived the device in issue in July, 1890, and made disclosure thereof to others as early as 1892, and this the proof would seem clearly to establish. And it is clearly shown that Buhoup reduced his device to practical use, by using the round pin with button head in couplers on cars of the Alleghany Valley Railroad for more than two months from about October 5, 1894. About the latter part of December, 1894, it was found that some of these round-shanked pins

were either bent or broken in the use, and Buhoup then concluded to substitute for the round-shanked pin and button head the square-shanked pin with oblong head, and upon substituting the square-shanked pin, it became necessary to square the holes in the heads of the couplers to receive the square pin.   In March, 1895, couplers having this form of pin were applied to cars on the Cincinnati, Jackson and Mackinaw Railroad, and have been in constant use ever since.

It is true, while it is not conceded by Hien, that Buhoup had a conception of any device involving a gravity pin of any kind for the purpose of holding back the locking block when the couplers are uncoupled, prior to the time when he saw Hien's model ; yet it is argued on the part of Hien, that even if Buhoup did have a conception of such a device, it was nothing more than the round-shanked pin with button head, such as was first used on the cars of the Alleghany Valley road, and it was, therefore, at most, but a conception of an *inoperative device,* and that the use of these couplers with the round pin amounted to nothing more than an *unsuccessful experiment,* and was not in fact and reality a reduction to practice of *the device in issue.*   Hien, therefore, contends that the earliest date that can be given to Buhoup for conception, or reduction to practice of the operative invention of the device in issue, is the date of placing the *square-shanked pin in the couplers* in substitution for the broken or bent pins on the cars of the Alleghany Valley Railroad ; and that the principle of this device was derived from seeing the model of Hien.   But the testimony in the case would seem to be quite clear that Buhoup did not adopt or pattern after the invention or device of Hien.   This is abundantly shown by the testimony of Buhoup himself, and by other witnesses, to say nothing of the force of the circumstances of the case.   It is a circumstance of much significance that the substitution and use of the pins with square shanks and oblong heads were also prior to the date of

Hien's application for a patent, or to any attempt on his part to reduce his invention to practical use, although the substitution of the square-shanked pin for the round-shanked pin by Buhoup was after the latter had seen the model of Hien. But that model does not disclose pins with square shanks or any other form of gravity pins, but a gravity leaf, instead. Hien was shown Buhoup's device of a gravity pin, and he was very decided in his opinion that it would not work. He now insists that Buhoup received the idea as to the oblong inclined head to the square-shanked pin from an inspection of the Hien model of the gravity leaf, and that, therefore, the reduction to practice of the device of the square-shanked pin with oblong inclined head should inure to Hien's benefit. But this contention can not be sustained. As said by the Assistant Commissioner of Patents: "The only feature of this pin which it is contended that Buhoup adopted from Hien's model is the form of the head on the pin, that is, the inclined surface. It is true that the ʻcam sufface' of the square-shank pin is of substantially the same shape as that of the wing leaf of Hien's model; but at the same time it is merely carrying forward of a more mechanically perfect form of the ʻbutton head' pin. As shown, the button head pin had inclined suffaces, and differs from the substituted form only in the angle and the extent of this incline. It is such a change as would naturally be made when it was found that in certain cases the incline on the button head pin was too abrupt to obtain the best results." We entirely agree with the Assistant Commissioner; and our conclusion is the same as that reached by the Assistant Commissioner and the examiners who had previously passed upon the case, that it has not been established that Buhoup appropriated any substantial feature of Hien's invention in making the square-shanked pin with oblong head. To make the change from the round-shanked pin with button head to that of a square-shanked pin with oblong head to overcome a defect in

operation, was simply a matter of variation in construction, not affecting the substance of the invention claimed by Buhoup; and such change or variation in form could well be made "by mere mechanical skill, without the exercise of the faculty of invention," in order to render more perfect the operation of the original device. *Pickering* v. *McCullough*, 104 U. S. 310, 319.

It being clearly shown that Buhoup was the first to conceive the device of the issue, and the first to reduce the invention to practice, and was also the first to make application for a patent, he is therefore entitled to priority of invention of the device involved in the issue of interference. Upon the evidence in the case, we discover nothing to support the objection of laches taken to Buhoup's claim.

The decisions of all the tribunals in the Patent Office were in favor of Buhoup's claim; and where such is the case, it must clearly and affirmatively appear that there has been some oversight, or mistake, or wrong construction of material facts, or some mistake or misapplication of some controlling principle of law, to justify this court in reversing the decision appealed from. In this case we find no such error to exist.

*The decision appealed from is therefore affirmed; and the clerk of this court will certify this opinion and the proceedings in the cause to the Commissioner of Patents as required by law.*