### TYSSOWSKI v. THAYER et al.

(Circuit Court, N. D. Illinois, E. D. February 6, 1908.)

No. 26,798.

PATENTS—AGGREGATION OF OLD DEVICES—PYROGRAPHIC TOOL.

The Tyssowski patent, No. 727,034, for a pyrographic tool, "comprising a combined pyrographic point and a scorcher," covers a mere assembling in one implement of two distinct devices of the prior art, not capable of conjoint use, and each of which maintains its autonomy and works independently of the other in its accustomed manner, and having no influence on the other or its operation, and is void as a mere aggregation and for lack of novelty. The scorching device, if conceded validity, must in view of the prior art be limited to a tapering nozzle, and is not infringed by one in which the inner walls are parallel.

In Equity.

Joseph G. Tyssowski and George Kolb, for complainant.
Brown & Williams and Charles A. Brown, for defendant.

KOHLSAAT, Circuit Judge. The bill herein was filed to restrain defendants from infringing claim 3 of patent No. 727,034, granted to Z. N. Tyssowski, May 5, 1903, for a pyrographic tool. The claim reads as follows, viz.:

"3. A tool for pyrographic work, comprising a combined pyrographic point and a scorcher, said pyrographic point consisting of a hollow pointed instrument adapted to be brought into direct contact with the material operated on, and having an interior combustion-chamber by which it may be heated to incandescence, and said scorcher consisting of a nozzle having a passage-way through it of such limited cross-section as to maintain the pressure and temperature of the escaping gases, whereby a hot fine jet of escaping gases, at charring temperature, from the combustion-chamber may be projected with precision, substantially as described."

The sole contention arises with. regard to a nozzle or nipple raised at a right angle to the tool, through which a hot jet of escaping gas from the combustion-chamber of the tool may be accurately applied to char or shade any desired object: The patent calls for a combination tool, having a burning or etching point at its end, and this nozzle opening somewhere back of the end. There is no co-operative relation between the etching end and the nozzle. They are both supplied with heat from the same source. They are not capable of use at the same time. They constitute, in fact, a device containing two separate implements of the prior art in one handle, much as in the lead pencil and tack hammer, with the difference that they are both supplied with heat from one heating plant. They still are two distinct tools, having the several prior art functions of each, and made effective in the same way, when used separately. The etching end of the tool of the prior art is identical with that of the patent in suit. In most of the tools of the prior art an opening through the wall of the combustion-chamber without any nozzle serves to provide a vent for the gases and a means for scorching, charring, or shading the object to be manipulated. These still constitute a large.percentage of the tools in actual use. The opening is made large for coarse work and small for fine work. There is also to be found in the prior art the combination of the etching end and a nozzle adjusted to the scorching vent.

In the patent granted to Beach December 13, 1898, for a thermo-cauter-lancet, the specification, lines 54 to 65, p. 1, reads:

"The improvements consist, lastly, in the provision, at the exhaust-orifice by which the products of combustion are emitted from the combustion-chamber, of an adjustable jet-nozzle by which the blast products of combustion may be so directed with regard to the work or point of application of the instrument that the fumes arising from the charring of the substance operated on may be carried away by the induced current, and prevented from incommoding the visual or respiratory organs of the operator."

Complainant's nozzle is longer than that of Beach, and calls for what the patentee terms, "a fine issuing channel at its delivery end and is preferably made tapering at its inlet." At lines 45 to 78, p. 2, of the specification in suit, he says:

"In my invention the size of the duct or channel-way in the nozzle must be very small or fine in relation to the outlet from the combustion-chamber or the combustion-chamber itself, so that there shall be maintained up to the point of final issue, and even beyond it, a proper compression and concentration of the hot gases, so as to maintain, conserve, and utilize their scorching temperature, without which no useful effect can be obtained. This effect is perfectly attained in my laterally-projecting concentrating-nozzle, and while I prefer the tapering duct within the same smallest at the outer end I do not confine myself to this tapering form of duct or passageway, it being only important that the issuing-orifice itself should be of such limited cross-section as to maintain the compression of the gases and their scorching temperature and at the same time so concentrate the energy of the fine hot escaping stream as to give it localization for purposes of delineation and with the tool at a distance from the work far enough away to enable the operator to see the work while it is in progress of execution.

"It is to be distinctly understood that while I have described various preferred forms of my invention I do not limit myself thereby in any way, but consider as falling within my invention any structure which may be included within the scope of the appended claims."

Some of the witnesses say they can do any kind of work with the mere orifice in the combustion-chamber wall, by varying the size of the orifice. Some prefer the nozzle because they can thereby better see the article worked on. It is in evidence for defendants that the alleged infringing device does not constitute 1 per cent. of their trade in these tools.

Defendants charge both invalidity and noninfringement upon the grounds (1) that the device of the patent is a mere aggregation; (2) that defendants' nozzle is not the device of the patent in suit. From what has been said before, it is evident that claim 1 describes a mere assembling in one implement of two distinct devices of the prior art, each of which maintains its autonomy and works independently of the other in its accustomed manner, and having no influence upon the other or its operation. It comes fairly within the rule laid down in Reckendorfer v. Faber, 92 U. S. 347, 23 L. Ed. 719; Pickering v. McCullough, 104 U. S. 318, 26 L. Ed. 749; National Cash Register Co. v. American Cash Register Co., 53 Fed. 371, 3 C. C. A. 559.

As to infringement, unless complainant's device is limited to a tapering nozzle, it would seem to be fairly covered by the Beach patent. It is admitted that the inner walls of defendants' nozzle are parallel, viz., they do not taper. Whether or not the nozzle is made of so small a cross-section as to restrict the outward flow of hot gas is not made plain. There can hardly be said to be any patentable novelty, in view of the prior art, in lengthening the nozzle of the Beach patent to correspond with that of defendant. As the matter stands, there is nothing in the record deemed sufficient to overcome the judgment of the court on the application for preliminary injunction, and the bill is dismissed for want of equity.