25 C.C.P.A. (Patents)

### In re BEATTY.

### Patent Appeal No. 3876.

Court of Customs and Patent Appeals.
March 7, 1938.

W. E. Beatty, pro se, Ralph B. Stewart, of Washington, D. C., and I. R. Goshaw, of Beverly Hills, Cal., for appellant.

R. F. Whitehead, of Washington, D. C. (Howard S. Miller, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

JACKSON, Associate Judge.

Appellant has appealed to this court from a decision of the Board of Appeals of the United States Patent Office, affirming that of the Examiner which rejected, in view of the prior art, claims 2 and 3 (all of the claims) of the application.

The claims are as follows:

"2. The method of making composite motion pictures which comprises projecting with an arc light and at a speed of the order of twenty-four frames per second a motion picture background scene on a screen, depicting the picture thus produced mainly with light having a longer wave length than ultra violet light displaying a foreground scene in front of said screen, illuminating said foreground scene with light having mainly a longer wave length than ultra violet light, the intensity of illumination of said screen and of said foreground being substantially balanced as viewed from the cinematographing position, and in cinematographing the scene on the stage and the projected pic-

ture thus illuminated with film which is highly sensitive to both of said lights, and at a sound recording speed of the order of twenty-four frames per second in synchronism with the projection of said background motion picture on said screen.

"3. The method of making composite motion pictures which comprises projecting with an arc light and at a speed of the order of twenty-four frames per second a motion picture background scene on a translucent screen, thereby depicting the picture projected thereon mainly in panchromatic visible light displaying a foreground scene in front of said screen, illuminating said foreground scene with a noiseless lamp emitting mainly panchromatic visible light, the intensity of illumination of said screen and of said foreground being substantially balanced as viewed from the cinematographing position, and in cinematographing the scene on the stage and the projected picture thus illuminated with film which is highly sensitive to said panchromatic visible lights, and which is more sensitive to light from said lamp than from said arc light, and at a sound recording speed of the order of twenty-four frames per second in synchronism with the projection of said background motion picture on said screen."

The references relied upon are: Jelinek, 1,933,854, November 7, 1933; Pember (British), 320,064, October 2, 1929.

Appellant's claimed invention is a method of producing composite moving pictures in which a background scene previously photographed is projected with an arc light on a translucent screen from the rear of the screen, and in the foreground are placed objects and performers, the composite scene being photographed by means of a motion picture camera. The picture on the screen is a motion picture and the actors perform in synchronism with the picture. The camera positioned in front of the screen and stage is synchronized by means of motors with the projector behind the screen. A microphone is positioned to record sound, and, since the sound is recorded simultaneously with the photographing of the composite scene, both camera and projector must be operated at the sound recording speed of 24 frames per second instead of the usual 16 frames per second. Appellant states that ordinary film is not sufficiently sensitive to permit operating the camera at a speed of 24 frames per second, so he uses a "super-sensitive" or "super-speed"

film which was first produced in 1931. This film is sufficiently sensitive to record 24 frames per second with normal studio lighting. This film has a further advantage, in that it is sensitive to both red and blue light, but more sensitive to red than to blue light. Since the light from the arc lamp of the projector is predominantly blue and that of the incandescent lamps illuminating the action and scene on the stage is predominantly red, the selective sensitivity of the film makes is possible to obtain the correct gradation of lights and shadows in both the foreground and background images, while the intensities of illumination of the screen and the foreground are substantially balanced.

The Jelinek patent discloses a method of producing composite moving pictures, in which a background scene is projected from the rear, on a screen, with the actors and foreground objects in front of the screen. The foreground is illuminated by lamps and the composite scene photographed by a moving picture camera with simultaneously recorded sound. The patentee states that since the background images projected by visible light rays are not bright enough to be recorded by a motion picture camera, he uses ultraviolet light, since the film is more sensitive to such light than to visible light. He states that ordinary glass will not transmit ultraviolet light, so that the lenses of camera and projector, the screen, and the film in the projector are made of material which is pervious to ultraviolet light. The lamp of the projector is an arc lamp which emits rays rich in ultraviolet rays. The foreground lamps may emit either visible or ultraviolet light.

The Pember patent discloses a method of producing composite pictures and differs from the Jelinek patent in that the light from the projector is visible light, and sound is not recorded. The patentee states in his patent, "that in the case of cinematographic projection on to the back of the translucent screen, the projector will have to operate synchronously with the camera." The patent also shows that the illumination of the background and foreground must be balanced. The patent further states that "the projector 20 must be powerful enough to produce an image on the screen 11 which has at least the same relative intensity of illumination as the stage 10."

It is admitted by appellant "that it has been proposed prior to his invention to

photograph a foreground scene before a translucent screen on which the background scene is projected by a motion picture projector."

The matter before us appears to be narrowed to patentability of the claimed method comprising the kinds and relative intensities of the lights from the projector and in the foreground, the number of picture frames per second, the kind of film used, and the feature of synchronism between the camera and the projector.

We assume that the expression "at a sound recording speed," set forth in the claims, indicates that sounds are recorded simultaneously with the taking of the pictures.

The Jelinek patent discloses the recording of sound upon the same film on which the picture is taken, so we may consider this feature as old.

Appellant admits that since 1926 it has been the standard practice in the taking of moving pictures to use a speed of film, when recording and when reproducing the sound and picture, of 24 frames per second. It would appear, therefore, even though the patent to Jelinek does not specifically show a speed of 24 frames per second, that this rate must be the speed of his film in order to record the sounds. But since this step has been conventional in the art since 1926, it would seem to be a feature not patentable by itself.

The feature of synchronizing the projector with the camera is clearly shown in the Pember patent.

Both references show the use of an arc light to project the background picture in conjunction with the foreground lighting, and it would seem that the disclosure of the use of lamps as shown in the references would teach one skilled in the art to use incandescent filament lamps in the foreground. That this is a reasonable view is supported by a statement made by the appellant in a letter to the Commissioner of Patents, and appearing in the record, as follows: "Furthermore, it is applicant's position that the reference in the present case to the use of a lamp for lighting the foreground action, would teach one to use incandescent filament lamps which were in common use in May, 1931 for stage lighting."

The balancing of intensities between the background and the foreground lighting will now be considered. Each of the references specifically discloses the desirability of balanced illumination between the light thrown from the projector and the foreground light. That this feature is not patentable is further made clear by a statement contained in an affidavit filed on behalf of appellant in which it is stated: "It seems obvious that a balance of the light intensity on the foreground and on the screen should be obtained. * * *"

The principal feature, and seemingly the only one in the appealed claims which does not appear in the references, is the kind of film used in the camera.

In this respect the Examiner held: "The selection of film having the sensitivity required to produce a desired effect involves nothing more than the ordinary skill of a person working in the art. The particular film used by appellant is intended to be used in all motion picture processes requiring the use of highly sensitive film. * * *"

The Board of Appeals stated: "It appears that as soon as more highly sensitive or faster film was developed that it would be no more than obvious to use it where it was found desirable to have higher speeds. * * *"

Appellant urges that the affidavit of Fred W. Jackman, who states he had long experience as a motion picture cameraman, and whose work in 1936 appeared to include the direction and supervision of composite photography for motion pictures, establishes the contention that the use of "super-sensitive" film used in the claimed method is not obvious to one skilled in the art. This affidavit has had our careful consideration.

We do not deem it sufficient to establish that the use of supersensitive film is not obvious to one skilled in the art. We do not see how an experience of the affiant in 1926, in taking a composite picture with the film then available as his basis for being "unwilling to believe it after it had been disclosed to me by Beatty," is proof that the use of supersensitive film, not known until 1931, is not obvious to one skilled in the art.

In the case of In re Wietzel et al., 39 F. 2d 669, 672, 17 C.C.P.A., Patents, 1079, the court quoted language of the Board, which seems appropriate here, as follows: "And, where there is no real reason to suppose that the result would not be produced there is no invention in trying it and finding out that the process is successful."

The affidavit of Bernard M. Bodde, a manufacturer of translucent screens, is en-

tirely to the effect that the processes of the references are not practicable or may be inoperative. The statements appear to be based upon the ineffectiveness of the apparatus rather than the method disclosed in the references.

We think the cases cited by the solicitor are controlling on this point.

In Re Lawson, 36 F.2d 525, 528, 17 C. C.P.A., Patents, 743, it was said that: "the law is well settled that it was not necessary to build a machine, commercially practice the methods, or produce the article disclosed, in order to constitute it a valid reference anticipating appellant's claims. Pickering v. McCullough, 104 U.S. 310, 26 L.Ed. 749; Tashjian v. Forderer Cornice Works [9 Cir.] 14 F. (2d) 414."

See, also, Application of Talley, 53 App.D.C. 99, 288 F. 453, and In re Crowell, 84 F.2d 206, 23 C.C.P.A., Patents, 1246.

There is no claim that appellant has invented the kind of film used in the process of the claims. It is a kind of film sold by the manufacturer, and dedicated to such uses as would be obvious to the producers of motion pictures. The use of such new film in an old process does not of itself render the process patentable.

The case of Slayter & Co. v. United States Insulation Corp., D.C., S.D. New York, 20 F.Supp. 376, 378; 35 U.S.Pat. Quart. 159, has been strongly stressed by appellant as supporting his contention. There, the defendant, in an infringement suit, challenged the validity of plaintiff's reissued patent, alleging lack of invention, anticipation by other patents, and prior use of the method of heat insulation. Plaintiff claimed as his invention a method of building a wall, whereby insulating and fire-resisting properties would be increased by blowing into spaced apart walls of a building previously constructed, through openings into the air spaces, an insulating and fire-resisting material. Slayter had devised and claimed as new the insulating fire-resisting material used in his method, and this material was described in the specifications of both his old and his reissued patents. The court said: "If there be any new element in, or any new result achieved by, Slayter's patent such element or result must be found in his synthetic insulating material."

And further on in the opinion the court stated: "It was with his insulating material, therefore, that Slayter turned the scale in his favor."

The difference between the facts in the instant case and the facts in Slayter & Co. v. United States Insulation Corp., supra, are so marked that the opinion in the latter can lend no support whatever to appellant's contention here.

It would seem that the case of In re Reeves, 71 F.2d 195, 197, 21 C.C.P.A., Patents, 1159, would apply here. There the court said:

"It is not denied that appellant has combined certain features shown in the cited prior art. Appellant claims, however, that what he has done, irrespective of what others have done, amounts to a success and is a practicable, workable, and useful method, in which method there is invention. It is not contended by the Patent Office tribunals nor by the Solicitor for the Patent Office that appellant's method, as a whole, is taught in any single reference or that the method of appellant lacks in practicability and usefulness. It is the view of the board that no invention was involved. The only question in the case is: Did the changes made by appellant from the prior art require invention or were they the result of the application of mere mechanical skill?

"Appellant has cited and quoted from a great many decisions relating to the combination of old parts and old elements. * * * Appellant also urges that it is shown that the prior art devices are impracticable and incapable of successful operation. It is therefore contended, under * * * and other decisions, that a patent for an improvement or manufacture, which does not accomplish the objects and purposes of its conception and is impracticable, does not anticipate a later patent upon a similar device capable of successful operation.

"On this subject it was the view of the board that whatever modifications of the prior art appellant had made, which makes his method a success, even if the prior art methods were unsuccessful, were the result of mechanical skill only. We are constrained to agree with this conclusion."

For the reasons herein stated, the decision of the Board of Appeals is affirmed.

Affirmed.