Mr. Justice G-BIER
 

 delivered the opinion , of the court.
 

 The patent act of 1836
 
 *
 
 enumerated the discoveries or inventions for which patents shall be issued, and describes them, as “ any new and useful art, machine, manufacture, or composition of matter. ”-
 

 ¥e have been at some loss to discover under which category to class the four patents which are the subjects of this bill. The complainant alleges that he has invented a new and useful improvement in the construction of
 
 jails.
 
 Now a jail can hardly come under the denomination of “ a machine;”-nor, though made by hands, can it well be classed with “manufactures;” nor, although compounded of matter, can it be termed a “ composition of matter,” in the meaning of the patent act. “But if the subject-matter be neither a machine nor a manufacture, nor a composition of matter, then,” says an author on the subject of patents,
 
 †
 
 “ it
 
 must
 
 be an art, for there can be no valid patent except it be for
 
 a thing made,
 
 or for the art or
 
 process of making
 
 a thing.” Now, without attempting to define the term “ art” with logical accuracy, we take as examples of it, some things which, in their concrete form, exhibit what we all concede to come within a correct definition, such as the art of printing, that of telegraphy, or that .of photography. The art of tanning leather might also come within the category, because it requires various processes and manipulations. The difficulty still exists, however, under which category of the patent act an improvement in the construction of jails is to be classed, or whether under any.
 

 The patent act of 1842
 
 ‡
 
 gives a copyright for “ new and
 
 *298
 
 original designs for manufacture, whether of metal or other material, for bust, statue, &c., or any new and original shape or configuration of any article of manufacture, to any inventor who shall desire to obtain an exclusive property, to make, use, and vend the same, or
 
 copies,
 
 of the same.”
 

 Now, although the complainant might contend (as one would suppose from the immense number of plans, designs, and drawings with which the record'in the case has been incumbered) that his patent could be supported under this act, yet still the difficulty remains whether the erection of a jail can be treated as the infringement of a
 
 copyright.
 

 But waiving all these difficulties as hypercritical, and assuming the correctness of the positions taken, that whatever is neither a machine, nor a manufacture, nor a composition of matter, must
 
 (ex necessitate)
 
 be “an art;” that a jail is a thing “made;” and that the patent is for. the
 
 “process
 
 of making it,” let us examine the case as presented by the bill and answer.
 

 The bill relies upon four several patents which it sets forth. They are dated January 7th and 20th December, 1859; 21st February and 24th July, 1860. It would seem from the quick succession of these patents and before the plans for building jails which they severally suggested could well be put practically into operation, and before any inquiry was made as to how other persons constructed jails, that as a new idea came into the complainant’s mind, he immediately proceeded to the Patent Office to get it patented.
 

 It is not necessary to the decision of this ease, to examine whether all or any of the suggestions made by the complainant wore proper subjects of patent. The bill presents a number of interrogatories to the defendant and requires him to answer them under oath. The answer of the defendant denies that the complainant was the original and first inventor of the several inventions claimed, or of any of them, and avers that the devices described in the complainant’s patents were well known, and in use prior to the pretended invention of them by the complainant. And it enumerates many persons who had used the devices before the complainant,
 
 *299
 
 The record presents no question of law as to the construction of these patents. The only issues were of fact. It would be a tedious as well as an unprofitable task to attempt to vindicate the correctness of our decision of this case by quoting the testimony and examining the volume of plates annexed to it. The decision could never be a precedent in any other case. It is enough to say that' we see no reason to doubt the correctness of the decision of the Circuit Court on the issues made, or the pleadings.
 

 Decree affirmed.
 

 *
 

 §
 
 6, 5 Stat. at Large, 119.
 

 ‡
 

 § 3, 5 Stat. at Large, 544.
 

 †
 

 Curtis on Patents, 91