CRIER v. INNES et al.

(Circuit Court, D. Vermont. January 30, 1908.)

1. PATENTS—INVENTION—DESIGNS.

The mere assembling of old parts to make a structure of a new design, although new lines and curves and a harmonious and novel whole are produced, does not involve invention so as to render the design patentable.

[Ed. Note.—For cases in point, see Cent. Dig. vol. 38, Patents, § 33.]

2. SAME—MONUMENT.

The Young design patent, No. 27,115, for a design for a sarcophagus monument, is void for lack of invention, the separate parts of the monument shown all being old in the art.

In Equity. On final hearing.

Frank C. Curtis, for complainant.

John W. Gordon, for defendants.

MARTIN, District Judge. The complainant alleges an infringement of a design patent, No. 27,115, issued to William H. Young, of Troy, N. Y., under date of May 25, 1897, for a design of a sarcophagus monument; that said patent was duly issued and thereafter assigned to the complainant with all claims for damages and penalties for infringements of the same; that said letters patent have been duly adjudged valid by the Circuit Court of the Northern District of New York and the Circuit Court of Appeals for the Second Circuit in the case of Young v. Daley, 120 Fed. 1023;[1] that the defendant Innes and Marr's intestate, Cruickshank, of Barre, Vt., were in partnership under the firm name of Innes & Cruickshank, and that they knowingly infringed said patent between the date of its issue and the date of said Cruickshank's death by constructing and selling monuments embodying the patented design; that since said Cruickshank's death the defendants Innes and Marr, administrator as aforesaid, have continued and threatened to continue such infringement, and praying for an injunction and an award of the statutory penalty

[1] 56 C. C. A. 686.

of $250, etc. The answer in substance denies Young's invention as an original design for monuments; denies that the same is useful; disclaims knowledge of said letters patent, and denies their validity; avers that every element of the design in question was in common use before said letters patent; and challenges every allegation in the complainant's bill of complaint. Issue was joined, and a large amount of evidence taken.

The patented design represents a monument with a lower and upper base, and upon the upper base rests a die which is surmounted by a cap. The general form of these members is rectangular with two elongated sides. The vertical sides of the bases and die exhibit uncut rock. One or both of the long vertical sides of the die are ornamented with a hammered or polished tablature in the form of a central arch extending nearly to the top of the side, leaving above the tablature a projecting tablet of rockwork extending across the upper side of the die comparatively narrow at the middle of the side and gradually increasing in width toward each end. Upon the face of the tablature may be placed an arched tablet having its upper and lower border-lines parallel with the border-line of the arch of the tablature. The leading feature of the design consists in "the ornamental configuration of the die," and the letters patent conclude as follows:

"I do not wish to be limited to a plane surface for the arched tablet, as the same may be cut to form special designs with my general design. The arched tablet may be either intaglio or relievo. What I claim is new, and desire to secure by letters patent, is the design for a monument herein shown and described."

The general configuration of this patented design is old. It is simply the sarcophagus style. The evidence shows that the two bases of uncut rockwork were in use many years before this patent was obtained. The use of a die with an arch over the tablature, ornamented with spandrels of different designs, some of skilled carving, some of plane hammered surface, and some of uncut rock, is old in the construction of sarcophagus, obelisk, and cottage monuments, and as to sarcophagus monuments, rectangular designs are old in use. Sarcophagus caps of monuments of the same rock-shaped configuration as that of this patented design where in use many years preceding these letters patent. Just such an overhanging arch of rock-faced spandrels extending across the top, as is in this patented design, is not found in any of the exhibits of the old designs, but the same idea is found in Exhibits 60 and 83, if not to say others; and whether the patented design is an improvement upon the old art is more a matter of taste than of inventive genius. By putting the die of defendant's Exhibits 69 on the two bases of defendant's Exhibit 59, and capping it with the cap of defendant's Exhibit 25 or 26, or applying to the defendant's design 68 the uncut rockwork of defendant's Exhibit 25, we would have a monument so nearly resembling this patented design that, if this patent is sustained, it would be an infringement; to the ordinary observer it would look the same, and that is the test of infringement, and the four monuments made by the defendants would be deemed an infringement.

A person who prefers a sarcophagus monument to any other style and has a special fancy for uncut rockwork, visiting a cemetery in which there has been placed the Stewart monument, Defendant's Exhibit 85, and a monument constructed from the design of defendant's Exhibits 68 and 25, and concludes to use the two bases of 85, the die of 68, by changing the spandrels over the tablature from carving to uncut rockwork, and using the cap of 25, would have a monument in general appearance like this patent, and should he prevail upon some stone cutter to make a monument to suit such a taste, he would quite likely get that stone cutter into chancery for having infringed this patent; yet nothing would have been done except to assemble old parts. No one of those elements contributes to the completed result any new feature except to meet the taste of the person making the selection, and therein applies the doctrine in Pickering v. McCullough, 104 U. S. 310, 26 L. Ed. 749:

"No one of them adds to the combination anything more than its separate independent effect; no one of them gives any additional efficiency to the others or changes in any way the mode or result of its action. In a patentable combination of old elements, all the constituents must so enter into it as that each qualifies every other; to draw an illustration from another branch of the law, they must be joint tenants of the domain of invention, seized each of every part per mi et per tout, and not mere tenants in common with separate interests and estates."

It was said by Judge Aldrich in Perry v. Hoskins (C. C.) 111 Fed. 1002, relative to a design monument:

"All the features in detail must be treated as old, for the stone cutter's art, as known and practiced from a very early period, has covered all conceivable shapes and forms in monuments and statuary, and the combination does not, as it seems to me, amount to a new and original design."

The lines of a draftsman and the chisel work of a sculptor of this day and generation are practically an imitation of old lines and old works. I somewhat question whether Congress, by its legislation on patents, intended to include monuments as works of manufacture, but assuming that such was its intent, there was but a small field open to the genius of invention in monumental designs.

It is claimed by this assignee of the patent in question that the ornamentation of the uncut rockwork overhanging the tablature on the die is a special feature and a novelty. Evidently, from the comments and decision of the learned and experienced judge who tried the Daley Case, the patentee established that fact from the evidence in that case, but it does not so appear in the case that is before me. The same idea is found in the die of several of the defendant's exhibits, the only difference being in the shape and proportions of the die and the good taste manifested in the general configuration of the whole monument. If a mere change in shape and proportions is to be construed as a patentable novelty, then the defendants have not infringed, for the monuments of their construction, on which the complainant bases this action, differ from the patented design in both shape and size; but in the design this special feature of the die, as set out in the letters patent, is not the basis of the patent. The patent is a design of a complete monument, and, from the evidence in this case, it appears that it

is composed entirely of ideas that are old. The only new thing about the complainant's design that I am able to discover, from all the evidence in the case, is its shape and form as the result of the assembling of old parts and old ideas.

In Thompson v. Boisselier, 114 U. S. 1, 5 Sup. Ct. 1042, 29 L. Ed. 76, the court holds that, while Congress has power to promote the progress of science in useful arts by securing to inventors the exclusive right of their respective discoveries, yet—

"the beneficiary must be an inventor, and he must have made a discovery. The statute has always carried out this idea. * * * So, it is not enough that a thing shall be new in the sense that in the shape and form in which it is produced it shall not have been before known, and that it shall be useful, but it must, under the Constitution and the statute, amount to an invention or discovery." See, also, Hill v. Wooster, 132 U. S. 693, 10 Sup. Ct. 228, 33 L. Ed. 502.

It is claimed that if a design presents a different impression upon the eye from anything which preceded it, and "proves to be pleasing, attractive, and popular, if it creates a demand for the goods of its originator, even though it be simple and does not show a wide departure from other designs, its use would be protected." That is, in substance, the language of Judge Strong, speaking for the court in Gorham Mfg. Co. v. White, 14 Wall. 511, 20 L. Ed. 731. This expression is found in that opinion:

"The law manifestly contemplates that giving certain new and original appearances to a manufactured article may enhance its salable value, may enlarge the demand for it, and may be a meritorious service to the public. It therefore proposes to secure for a limited time to the ingenious producer of those appearances the advantages flowing from them. Manifestly, the mode in which those appearances are produced has very little, if anything, to do with giving increased salableness to the article. It is the appearance itself which attracts attention, and calls out favor or dislike. It is the appearance itself, therefore, no matter by what agency caused, that constitutes mainly, it not entirely, the contribution to the public which the law deems worthy of recompense."

But it will be observed that in Smith v. Whitman Saddle Co., 148 U. S. 674, 13 Sup. Ct. 768, 37 L. Ed. 606, the Supreme Court, speaking through Chief Justice Fuller, evidently purposely quotes the language of Mr. Justice Strong in Gorham Mfg. Co. v. White, supra, and then adds:

"But, as remarked by Mr. Justice Brown, then District Judge for the Eastern District of Michigan, in Northrop v. Adams, 12 O. G. 430, 2 Bann. & Ard. 567, Fed. Cas. No. 10,328, which was a bill for the infringement of a design patent for a cheese safe, the law applicable to design patents 'does not materially differ from that in cases of mechanical patents, and all the regulations and provisions which apply to the obtaining or protection of patents for inventions and discoveries * * * shall apply to patents for designs. * * * To entitle a party to the benefit of the act in either case there must be originality and the exercise of the inventive faculty. In the one there must be novelty and utility; in the other originality and beauty. Mere mechanical skill is insufficient. There must be something akin to genius—an effort of the brain as well as the hand. The adaptation of old devices or forms to new purposes, however convenient, useful, or beautiful they may be in the new role, is not invention.' * * * The shape produced must be the result of industry, effort, genius, or expense, and new and original as applied to articles of manufacture. Foster v. Crossin (C. C.) 44 Fed. 62. The exercise

of the inventive or originative faculty is required, and a person cannot be permitted to select an existing form and simply put it to a new use any more than he can be permitted to take a patent for the mere double use of a machine. If, however, the selection and adaptation of an existing form is more than the exercise of the imitative faculty, and the result is, in effect, a new creation, the design may be patentable."

Again, the learned Chief Justice quotes the judge who first decided the case then in hand as follows:

" 'A mechanic may take the legs of one stove and the cap of another and the door of another and make a new design which has no element of invention; but it does not follow that the result of the thought of a mechanic who has fused together two diverse shapes which were made upon different principles, so that new lines and curves and a harmonious and novel whole are produced which possesses a new grace, and which has a utility resultant from the new shape, exhibits no invention.' And he held that this was effected by the patentee, and that the shape that he produced was therefore patentable, but we cannot concur in this view."

Apply that principle to the case at bar. We have before us a design of a monument, the bases, die, and cap, like the legs, top, and other parts of the stove, old in use, yet it makes a new design, so that "new lines and curves and a harmonious and novel whole are produced which possesses a new grace, and which has a utility resultant from the new shape." A design made up in this manner was held by the lower court in Smith v. Whitman Saddle Co., supra, to be valid and to be protected under the law, yet the Supreme Court reversed it. It is self-evident that the Supreme Court, in that case, intended to change the trend of the federal court in sustaining such patented designs as rest upon the assembling of old parts by "new lines and curves and thus a harmonious and novel whole is produced which possesses new grace," but without the genius of invention. In my opinion, the case at bar is just this kind of a patented design. A draftsman may so change the old art as to develop æsthetic beauty which may rise to the standard of invention, but to my mind this patent is the assembling of different elements of the old art, and so changing the configuration of a monument that it simply may or may not impress the fancy of a purchaser, but it is not the genius of invention. If the assembling of the old parts of other monuments into the Lockwood monument results in æsthetic beauty, it is by following the Lockwood monument in exact proportions, and the Lockwood monument in the matter of proportions does not follow the patented design; neither does any one of the four claimed infringing monuments made by the defendants. In fact, neither of those monuments follows the proportions of the patented design or of the Lockwood monument; hence this case is wholly unlike the cases cited by the complainant, viz.: General Gaslight Co. v. Matchless Mfg. Co. (C. C.) 129 Fed. 137; Untermeyer v. Freund (C. C.) 37 Fed. 342; Matthews Co. v. American Co. (C. C.) 103 Fed. 639.

Substituting rock-faced spandrels found in obelisk monuments for carved spandrels of sarcophagus monuments could not be sustained as a patented design under the law of Smith v. Nichols, 21 Wall. 112, 22 L. Ed. 566. Justice Swayne, speaking for the Supreme Court, therein said:

"A mere carrying forward or new or more extended application of the original thought, a change only in form, proportions, or degree, the substitution of equivalents, doing substantially the same thing in the same way by substantially the same means with better results, is not such invention as will sustain a patent. These rules apply alike, whether what preceded was covered by a patent or rested only in public knowledge and use. In neither case can there be an invasion of such domain and an appropriation of anything found there. In one case everything belongs to the prior patentee; in the other, to the public at large."

In view of all the evidence in this case as to the state of the prior art, I am unable to find in this design invention. It is the skill of the draftsman.

It is contended by the complainant that the doctrine of stare decisis should be applied in this case, and the Daley Case is cited. The assignments of error before the Circuit Court of Appeals in that case presented different questions from those that are before me in this case, and, although the same patent was there involved, the evidence and the questions raised differed, and therefore I hold that that doctrine does not apply.

The pleadings raise an issue of fact as to whether defendant Marr, as administrator, since the death of Cruickshank, has been interested in the manufacture of the monuments in question. The complainant claims that the defendants have made four monuments that infringed. I find, from the evidence, that those monuments were constructed before the death of Cruickshank, and that neither Innes, his partner, Cruickshank, nor Marr, the administrator of Cruickshank, knew of the existence of this patent, or that they were making monuments the design of which was covered by letters patent.

For the reasons above set forth, I think the bill should be dismissed, and it is so ordered. Decision as to costs reserved.