AIKEN et al. v. RITER & CONLEY MFG. CO.

(District Court, W. D. Pennsylvania. April 2, 1912.)

No. 29, in Equity.

1. PATENTS (§ 13*)—SUBJECTS OF PATENTS—"MANUFACTURE"—ROOF STRUCTURE.

A roof structure is a "manufacture" within the meaning of Rev. St. § 4886 (U. S. Comp. St. 1901, p. 3382), and is a proper subject-matter of a patent.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 11, 12; Dec. Dig. § 13.*

For other definitions, see Words and Phrases, vol. 5, pp. 4344–4346; vol. 8, p. 7716.]

2. PATENTS (§ 328*)—VALIDITY AND INFRINGEMENT—ROOF STRUCTURE.

The Aiken patent, No. 718,044, for a roof structure intended for large buildings, in which light is secured by constructing the roof in alternate bays, one resting on the lower chords of the trusses and the next on the upper chords with windows in the sides, was not anticipated, and discloses patentable invention; also held infringed.

3. PATENTS (§ 289*)—SUIT FOR INFRINGEMENT—LACHES.

Evidence held not to sustain the defense of laches in a suit for infringement.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 467–469; Dec. Dig. § 289.*]

In Equity. Suit by Nellie C. Aiken and Nellie C. Aiken, Jr., against the Riter & Conley Manufacturing Company. On final hearing. Decree for complainants.

Kay & Totten, of Pittsburgh, Pa., for plaintiffs.
John H. Roney, of Pittsburgh, Pa., for defendant.

ORR, District Judge. This matter comes before the court for final hearing upon bill, answer, replication, and proofs. The bill is in the usual form, and charges that defendant has infringed letters patent of the United States No. 718,044, granted to Henry Aiken on January 6, 1903, for "roof structure." Upon the death of Henry Aiken and in pursuance of a decree· of the proper court the title to the patent passed to the complainants, who are the wife and daughter of the patentee.

The purpose of the inventor is set forth in his specification as follows:

"In large manufacturing plants it has been the general custom to construct a series of buildings separated from each other in order to provide the neces-

---

sary light and ventilation; but such buildings are expensive to construct, they occupy much room, and the keeping of them in repair and the cleaning of the windows is a large item of expense.

"The purpose of my invention is to provide a construction enabling buildings to be built of large size, so that a manufacturing plant may, if desired, be included under a single roof and the difficulties above noted avoided.

"Instead of constructing the building with a flat roof or with a roof having angular projections and valleys, as heretofore, the first of such constructions being necessarily limited in size and the second being objectionable not only for this reason, but also because it favors the lodgment of snow and slush, I employ a series of elevated transverse trusses and form the roof with a parallel series of alternate surfaces at different levels supported by said trusses, the upper portions being preferably supported by the upper chords and the lower portions by the lower chords. I thus afford between the elevated portions of the roof intermediate spaces for the admission of light into the building."

Each of the five claims of the patent differs slightly from the others. Complainants are content to stand on claims 1 and 3, which are as follows:

"1. A roof structure having a series of trusses parallel with each other, and alternate roof surfaces at different levels extending between the trusses and affording intermediate spaces for the admission of light; substantially as described."

"3. A roof structure having a series of parallel trusses and alternate roof surfaces at different levels extending between the trusses and affording intermediate spaces for the admission of light, said roof surfaces being supported by the upper and lower chords of the trusses respectively; substantially as described."

The language of these claims is simple. Reading claim 1 we find that the roof structure shall have (1) a series of trusses, (2) parallel with each other, (3) and alternate roof surfaces at different levels, (4) extending between the trusses. Claim 3 differs from claim 1, in that it locates the position of the alternate roof surfaces by providing for their support by the upper and lower chords of the trusses respectively.

Before considering the defenses urged, it is well to note that over 2,000,000 square feet of the Aiken roof structure have been used in the erection of buildings in Pennsylvania and other states. When any of such buildings were erected by Mr. Aiken in his lifetime, he would include the royalty in his engineering services. From other buildings where royalty was specifically provided for he received as royalty over $45,000. One or more of those buildings extended a distance of approximately sixteen hundred feet. There appears to be no limit to the size of the buildings to which the patent may be applicable. The buildings have uniform light because of the opening or openings in each of the parallel trusses, and of course may have uniform ventilation. But the light and ventilation in one building may be different from those in another, depending upon the difference in space between the upper and lower chords of the trusses used in the particular building.

The defendant is using the structure shown in the Aiken patent. This is not denied. Of the numerous defenses set up in the answer, five only are urged against the bill, as follows: (a) The subject-matter

is not patentable; (b) is anticipated; (c) is not invention; (d) patentee was guilty of laches; and (e) structure not marked "patented," and no notice to defendant before suit.

[1] 1. That the subject-matter of the patent is not within the acts of Congress is most strongly urged by the counsel for defendant. He insists that it is "purely and simply an architectural product or design," and not within the classification expressed in section 4886, R. S. (U. S. Comp. St. 1901, p. 3382), viz.:

"Any new and useful art, machine, manufacture, or composition of matter, or any new and useful improvements thereof."

The first case cited in support of the position is American Disappearing Bed Co. v. Arnaelsteen, 182 Fed. 324, 105 C. C. A. 40. The patent in that case was for "apartment house with disappearing bed." By reference to the opinion of the court below (182 Fed. 326, 105 C. C. A. 40), it is found that the patent contained 13 claims, each of 9 of them being for a building, each of 2 of them for an apartment house, one for an apartment, and one for a room. Each clearly relates to the domain of architecture. That does not appear the reason why the patent was deemed invalid, for the opinion of the Court of Appeals (182 Fed. 325, 105 C. C. A. 41) states that "many devices and many novel combinations of materials used in the construction of houses are within the protection of the patent laws." The reason appears to have been that the classification of the statutes did not include the form "of a room in a house or of a recess in a room."

The case of Fond du Lac Company v. May, 137 U. S. 395, 11 Sup. Ct. 98, 34 L. Ed. 714, is also relied upon by the defendant. The patent in that case was for an "improvement in the construction of prisons." The patent was declared invalid not because the subject-matter was within the realm of architecture, but because there was found to be no patentable novelty. The Supreme Court (137 U. S. 404, 11 Sup. Ct. 101, 34 L. Ed. 714) say:

"The novel idea set forth in the patent is to interpose a grating between the jailer and the prisoners at every stage of opening or shutting a door."

They found that the several elements of the patented device were old and held that there was no patentable combination because the "mechanical operation and effect of the patented devices are the same whether there be a grating or other barrier or not." It appears that in the specification of that patent the invention was called an invention of improvements "in the construction * * * of prisons." What the court said in reference to the classification of such a patent is relied upon by the defendant in the present case. That the language was not intended to be decisive of the question then before the court plainly appears from the last sentence which we have italicized in the following excerpt from the opinion:

"In Jacobs v. Baker, 7 Wall. 295 [19 L. Ed. 200], suit was brought on four patents for 'improvements in the construction of prisons.' One was for a secret passage or guard chamber around the outside of an iron-plate jail, and between the jail and the surrounding inclosure, constructed for the purpose of allowing the keeper to oversee and overhear the prisoners without their being conscious of his presence. Another was for improved iron walls

for iron-plate jails. Another was for an improvement in joining the metal plates. Another was for arranging iron-plate cells in jails. This court held that an improvement in the construction of a jail did not come under the denomination of a machine, or a manufacture, or a composition of matter; and that it was doubtful whether it could be classed as an art. *But, however this may be, the grating, in the present case, cannot be considered as a part of a patentable mechanical combination.*"

It is not surprising that the court should in Jacobs v. Baker, 7 Wall. 295, 19 L. Ed. 200, be doubtful as to whether patents for improvements in jails were within the statute passed in pursuance of the constitutional provision giving Congress power "to promote the progress of science and useful arts," by securing to inventors the exclusive right to their discoveries. "Jails" is italicized in the opinion of Mr. Justice Grier in that case. His opinion was expressly left uncertain. The defense to the bill was invalidity by reason of prior use, which was sustained by the court below. It was assumed by counsel appearing in the Supreme Court that the matters of the patent were within the patent acts. That the same was assumed by the Supreme Court appears from the following portion of their opinion (7 Wall. page 298, 19 L. Ed. 200):

"But waiving all these difficulties as hypercritical, and assuming the correctness of the positions taken, that whatever is neither a machine, nor a manufacture, nor a composition of matter, must (ex necessitate) be 'an art', that a jail is a thing 'made,' and that the patent is for the 'process of making it,' let us examine the case as presented by the bill and answer."

A careful consideration of each of the above three cases leads to the conclusion that neither controls the issue raised by the defendant. The first case recognizes that many devices and combinations of materials used in the construction of buildings are within the protection of the law. At the same term of the Supreme Court when the second case was decided was also decided French v. Carter, 137 U. S. 239, 11 Sup. Ct. 90, 34 L. Ed. 664, where a patent for an improvement in "roof for vaults, mausoleums and structures of a similar character," etc., was before the court, yet no doubt was expressed by any one as to the inclusion of the same within the laws.

In Jackson v. Nagle (C. C.) 47 Fed. 703, a patent for "improvements in the method of illuminating basements," a patent for "iron and illuminating stairs," and a patent for "improvements in the construction of buildings," were held valid.

In Buffington Iron Building Co. v. Eustis (C. C.) 65 Fed. 92, the Circuit Court, and in 65 Fed. 804, 13 C. C. A. 143, the Court of Appeals, construed a patent "for improvements in iron-building construction," and neither of the courts expressed doubt as to the inclusion of the subject-matter within the classification of the statute. It is significant also that patents have been issued from time to time for many years with subject-matters similar to those in the patent under consideration. Defendant has produced in explanation of the prior art two United States patents, one for "construction of building," dated July 22, 1884, and one for "shed construction," dated February 9, 1886. It must follow, therefore, that the patent laws embrace many things used in building construction. It does not follow that because

the thing is to be assembled and set up upon or to become a part of the building that the protection of the law is lost to the inventor. There seems no more reason to classify as a manufacture a heating structure or a lighting structure or a ventilating structure, each of which varies to some extent according to the demands of the architect, than there is to give the same classification to a roof structure. That it is erected in situ does not appear to be particular. The sarcophagus monument described in Crier v. Innes (C. C.) 160 Fed. 103, was held to be a manufacture by the Court of Appeals in 170 Fed. 324, 95 C. C. A. 508. In Johnson v. Johnston (C. C.) 60 Fed. 618, Judge Acheson says:

"The term 'manufacture,' as used in the patent law, has a very comprehensive sense, embracing whatever is made by the art or industry of man, not being a machine, a composition of matter, or a design."

That being a correct statement of the law, it follows that the subject-matter of the patent in suit is patentable.

[2] 2. The defense of anticipation is not supported by evidence to sustain it. The answer sets up 16 United States patents, 7 British patents, and 1 German patent, all of which are alleged to have anticipated the Aiken patent to some extent. It also mentions definitely 6 publications which are alleged to have disclosed the Aiken roof structure. It avers (giving names) that some 26 persons and corporations were users of the roof structure for more than two years prior to Aiken's application for the patent. It would be futile to treat separately even such of the many alleged anticipations as were emphasized in the proof. What Mr. Aiken stated in that portion of his specification above quoted is found to be true from the evidence. In view of the testimony, it was perhaps too concise, in that it omitted reference to a form of construction of large buildings in which openings are made in the roof structure, which openings are covered by the erection *upon the roof structure* of cabins or other forms of construction whereby light and ventilation are afforded. Defendant most strongly insists that the roof of the Union Station at St. Louis and the roof of the South Terminal Station at Boston are complete anticipations of the Aiken patent. They are both of the cabin type. Emil Swensson, whose practical as well as professional experience makes his opinion valuable, points out that the Aiken roof has lighting facilities depressed in contradistinction to the others which have them raised.

3. The third defense to be considered is "that the patent in suit does not involve the exercise of the inventive faculty, and is but the exercise of mere mechanical skill." This cannot be sustained. It is true that the patent discloses what appears to be a simple structure. Yet prior to Aiken's invention engineers and builders had been endeavoring for years to reach the end he attained. His step was not a mere advance in the direction in which others were moving. It was the final step which reached the end desired. His roof structure was not obvious to one skilled in the art of steel construction, else why was it not disclosed before? This is peculiarly pertinent when consideration is given to its utility, to the demand for it, and to the fact

of common knowledge that steel construction has been in use in large buildings for over 20 years.

[3] 4. The defense of laches is not sustained. Aiken filed his application September 5, 1902. As early as March 30, 1901, he had procured drawings to be made disclosing his invention, and had made a contract with the Sharon Steel Company for their use of his roof structure. The evidence justifies the finding that the drawings for the Sharon Steel Company's plant were in the hands of defendant's employés on or before that date. The defendant began the erection of one of its buildings in or about November of 1901. It used and completed a roof structure which infringes the Aiken patent in or about May, 1902. This use was at Leetsdale, some miles from Mr. Aiken's home and place of business. There is no evidence that Mr. Aiken knew of this act of infringement prior to September, 1908. He then charges infringement, and demands settlement and payment of royalty. He died December, 1908. The present plaintiffs did not acquire title until 1910. Mr. Aiken's administrator and the plaintiffs from time to time to the time of bringing this suit had negotiations with the defendant looking to settlement of royalties. There does not appear to have been such negligent failure on the part of plaintiffs or their predecessors in title to assert their right as would bar them from bringing this action. Nor does it appear that the delay has been prejudicial to defendant.

5. The defense of want of notice is equally untenable, in view of the correspondence and negotiations between the parties.

It follows that the patent is valid, and that claims 1 and 3 are infringed. Let a decree be drawn in accordance with this opinion.