INTERNATIONAL MAUSOLEUM CO. v. SIEVERT et al.

(District Court, N. D. Ohio, W. D. April 26, 1912.)

No. 2,281.

1. PATENTS (§ 310*)—VALIDITY—DETERMINATION ON DEMURRER.

In passing upon the question of the validity of a patent, when raised by demurrer to a bill for its infringement, the court cannot take cognizance of anything dehors the record, excepting such matters as are of common knowledge.

[Ed. Note.—For other cases, see Patents, Cent. Dig. §§ 507–540; Dec. Dig. § 310.*]

2. PATENTS (§ 328*)—VALIDITY—SUBJECT-MATTER—BURIAL CRYPT.

The Hood patent, No. 858,070, for a burial crypt, which as described in the specification is a building, with a central hallway and receptacles for bodies arranged in tiers on either side, is void as for a subject-matter not within the patent laws, and also because the claims are each for an aggregation of nonco-operating elements, all of which were old and nonpatentable.

In Equity. Suit by the International Mausoleum Company against H. S. Sievert and others. On demurrer to bill. Decree for defendants.

Wallace R. Lane, for complainant.
Niles & Peters and Lynch & Dorer, for respondents.

KILLITS, District Judge. This case is before the court on demurrer to the bill of complaint. Complainant alleges that defendants are infringing a patent owned by it and granted to W. I. Hood, assignor of one-half to John W. Chesrown, June 25, 1907, No. 858,070, for burial crypt; a copy of the patent being attached and made a part of the complaint as an exhibit.

The court in Fowler v. City of New York, 121 Fed. 747, 58 C. C. A. 113, a case wherein profert only of the patent in the following language was made: "Which said letters patent or an exemplified copy thereof your orator will produce as your honors shall direct"—

held that the patent is therefore to be "regarded as part of the bill and will be examined on demurrer."

Seventeen grounds of demurrer are specified. We will consider grounds 15 and 16 only, which are that the "patent was granted and the claim of said patent was allowed for matter for which the Commissioner of Patents had no authority in law to grant a patent or allow a claim," and "that said Exhibit A shows on its face that said letters patent No. 858,070 is invalid."

We are not unaware that there is a presumption of validity of a patent so strong that it is improper to hold one invalid on demurrer, unless it so clearly appears to be invalid that no testimony can change the legal aspects of the case.

[1] But, when these considerations exist, the question of validity may be raised on demurrer, and the case may be determined on the issue so formed. Richards v. Chase Elevator Co., 158 U. S. 299, 15 Sup. Ct. 831, 39 L. Ed. 991. And manifestly, in considering the question, we may not take cognizance of anything dehors the record, excepting such matters as are of the stock of common knowledge, wherefore we are unable to consider the prior art, as invited by demurrants. But, considered in the narrow light constraining us, we find little difficulty in reaching the conclusion that the patent in question is invalid on its face.

[2] The claimant says in his application and specifications:

"This invention has relation to burial crypts, and it consists in the novel construction and arrangement of its parts as hereinafter shown and described. The object of the invention is to provide a community crypt having a hallway or lobby of sufficient size to accommodate the funeral attendants, and which will protect them during the services from extreme temperatures in the weather and also from storms."

This is the only expression of the patentee concerning the purpose and scope of his invention, although further along in the specifications he describes some results that may be obtained through the operation of his devices, the only ones of which appearing novel to us will be discussed later.

The specifications and claims are manifestly drawn with a lack of clear understanding of the meaning of terms, for beyond any question the word "crypt," throughout the entire letters patent, is used to designate a building housing receptacles for the bodies of the dead. The use of the word in the specifications meets no definition of the word in any standard dictionary. The patentee uses it in the sense of a burial building, or, as it is commonly known in the art now, of a mausoleum. He specifies that his crypt "comprises the hall or lobby 1 of sufficient size to accommodate a funeral train," with "catacombs * * * arranged in vertical rows, tier upon tier, and separated from each other by homogeneous partitions, preferably of concrete cement, and homogeneous tops; the lower surface of the floor of one set of catacombs forming the tops of the next set of catacombs below."

As we said of the use of the word "crypt," so we may say that he uses the word "catacomb" in a sense not found in any standard dictionary defining the word. Except that the structure upon which

he claims a patent is above ground, we might say that the careless· draughtsman of these specifications was reversing the use of the terms, and spoke of catacombs when he meant crypts and of crypts when he meant catacombs. It is certainly settled that, understanding that when the patentee speaks of "burial crypts" he means·a building erected on the surface of the ground, with a central hallway and burial receptacles arranged on each side, he is dealing with a subject that is not patentable. Such a construction is neither a new or useful ·art, machine, manufacture, or composition of matter, or any new or useful improvement thereof, or any new, original, or ornamental design for any article of manufacture.

The doctrine of Jacobs v. Baker, 7 Wall. 295, 19 L. Ed. 200, Fond‒ du Lac County v. May, 137 U. S. 395, 11 Sup. Ct. 98, 34 L. Ed. 714, and American Disappearing Bed Co. v. Arnaelsteen, 182 Fed. 324,. 105 C. C. A. 40, settles this point. In the first two cases above it was held that an improvement in the construction of a jail, being a building, did not come under the description of things subject to a patent covered by section 4886, Revised Statutes of the United States. (U. S. Comp. St. 1901, p. 3382). And, without the authority of these cases, it is common knowledge that the older countries present many instances of burial places under roof, with provision for the accommodation of funeral attendants, protecting them during services from the weather, with receptacles for the dead. The world has general knowledge. of the construction and arrangement of the Catacombs in Rome, and of churches and burial places generally, which make pro-. vision similar to that which the inventor, Hood, says is the object of his invention.

The specifications provide. for a construction by which the "catacombs" pass the gases and volatile products of decomposition into a common chamber, from which they may escape into the outer air and disseminate. This is one of the claimed novel features of the invention. This may be a novel result, but the device by which it may be accomplished cannot be said to be useful, for the dissemination of the offensive volatile products of decomposition of the human body into the atmosphere is hardly desirable, if, indeed, it is sanitary. We do not feel that we can say that a result so likely to become a nuisance can be the subject of patentable invention.

The means of escape of the gases of the decomposition from an individual "catacomb" is through a "valve port" in the rear. No description is offered or claim made for any novel valve, nor is any form of valve in fact shown; but we are led to understand that any gas· pressure relief valve may be employed. This device is an old one as applied to analogous purposes, and consequently is not invention, standing by itself, in view of the decision in Blake v. San Francisco, 113 U. S. 682, 5 Sup. Ct. 692, 28 L. Ed. 1070. The inventor also provides each "catacomb" with a port in the front end through. which he says the air may be "exhausted from the interior of the catacombs when the casket ·is first deposited therein." It does not appear from· the specifications. or from any· description that any ad-⸗ vantage inures in exhausting ·the air from ·a "catacomb" after ·the·

deposit of a casket, and it is a matter of common knowledge that a "catacomb" constructed preferably of concrete cement would not suffer the continuance of a vacuum within it for any appreciable length of time, as the porosity of concrete is undoubted.

The claims are as follows:

"1. A burial crypt, comprising a structure with a reception hallway, seamless catacombs arranged therein and spaced from the walls thereof, whereby an air passage is formed, said catacombs being provided with valve-controlled ports at their ends, which communicate with the said air passage, said passage having an outlet at, or near, the top of the structure.

"2. A burial crypt, comprising a structure with a reception hallway, seamless catacombs located therein and spaced from the walls thereof, whereby an air passage is formed, said catacombs being provided with valve-controlled ports at their rear ends, which communicate with said air passage, said passage, being provided with an outlet at or near the top of the structure, also valve-controlled ports at the front ends of the catacombs, through which the air may be exhausted therefrom after the same are sealed.

"3. A burial crypt, comprising a structure with a reception hallway, seamless catacombs located therein and spaced from the walls thereof, whereby an air passage is formed, said catacombs being provided with valve-controlled ports at their rear ends, which communicate with said air passage, said passage being provided with an outlet at or near the top of the structure, also valve-controlled ports at the front ends of the catacombs, through which the air may be exhausted therefrom after the same are sealed, and a horizontal shelf in front of each row of catacombs, the upper surfaces of the shelves lying in the same plane as the upper surfaces of the bottoms of the catacombs."

It will be observed that these several claims are generally each for an aggregation of nonco-operating elements, each of which is nonpatentable. It cannot be said, as the court in Pickering v. McCullough, 104 U. S. 318, 26 L. Ed. 749, says, that all the constituents so enter into the combination that each qualifies the other. As observed by counsel for demurrants, there is no joint or co-operating action between a reception hallway and the gas pressure relief valve, for the latter will operate, if it operates at all, indifferently whether the services are held in the reception hallway or dispensed with, or whether the gas container whose undue pressure it is to relieve is on a shelf in a receiving vault or out of doors. Nor is there any co-operating action between the horizontal shelf claimed in the third claim, which, in the specifications, the claimant says may be used for the support of "floral designs and appropriate emblems," and the gas pressure valve.

There is no patentability in the idea of a burial crypt (meaning a burial building) with a reception hallway, nor does the inclusion in such an edifice of seamless catacombs (meaning homogeneous burial crypts or niches for the deposit of individual bodies) bring about a patentable invention; for it is notorious that the sides of the corridors in the Roman catacombs were lined with burial niches cut into the solid rock or tufa, and, consequently, they were "seamless" in the walls.

Aside from the lack of co-operation between valve-controlled ports and the arrangement of the catacombs (crypts) on the sides of a central hallway, which we have noticed, ports in a sealed crypt to

permit the escape into the open air of noxious and perhaps poisonous effluvia cannot receive the sanction of a patent as a useful invention, and we may say that a port through which air may be exhausted from a chamber is not new, and in combination with other elements aggregated in these claims it adds nothing for want of necessary co-operation, as well as not serving a purpose specified to be useful.

A shelf in front of a "catacomb," on which a casket may be rested, and which may also support flowers or memorial designs, has, as an element of combination, already been noticed. Being but an enlargement of the base of the portal, it is old. Looking at these specifications as a whole, we are forced to criticise them as being so vague and ambiguous in their terms as to need extensive reconstruction in order to be understood and to constitute a source from which any plausible theory of the operation of the patentee's alleged invention may be deduced.

If the growth of the patent system at the time of the decision of Merrill v. Yeomans, 94 U. S. 568, 24 L. Ed. 235, had reached a stage in its progress which warranted the court in saying that there was no longer "excuse for ambiguous language or vague descriptions," we may at this time speak even more strongly, and say that an invention depicted in such slovenly and ill-considered and inconclusive language as this is not yet ready for protection by letters patent.

We consider that the alleged patentee's right to protection by letters patent is concluded against him by the cases cited above (Fond du Lac County v. May and American Disappearing Bed Co. v. Arnaelsteen), and that the demurrers should be granted, because of the invalidity of the letters patent.