KNIGHT v. RIEGER et al.

(District Court, D. Maryland. February 21, 1913.)

PATENTS (§ 328*)—INVENTION—MAUSOLEUM.

The Knight patent, No. 979,965, for a mausoleum having improved means of ventilation and drainage, is void for lack of invention, in view of the prior art.

In Equity. Suit by Maurice L. Knight against Henry P. Rieger, John Drobisch, Henry P. Rieger & Co., Incorporated, Laura Praeger,

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

and Christian B. Ohrenschall.  On final hearing.  Decree for defendants.

E. Hayward Fairbanks, of Philadelphia, Pa., and William R. Barnes, of Baltimore, Md., for complainant.

James W. Chapman, Jr., and William B. Smith, both of Baltimore, Md., for defendants.

ROSE, District Judge.  On December 27, 1910, letters patent No. 979,965 were issued to the complainant.  He still owns them.  By his bill filed February 1, 1911, he alleged that the defendants had infringed the claims thereof.  He asked for a preliminary injunction.  The patent had not been adjudicated.  It had but recently been issued.  There had been no long general acquiescence in its validity.  Nevertheless, the affidavits seemed to show the existence of some special circumstances which made a preliminary injunction proper as against some of the defendants.  It was issued.  The patent has relation to the construction of vaults or mausoleums for the dead.  The patentee says that his invention consisted of improved means for ventilating, draining, closing, and sealing the crypts of such mausoleums and in other novel features of construction.  No specifications of such novel features are made.  They are supposed to be writ large on the face of the patent and of the claims, and to be recognizable by that ideal person, a man skilled in the art.  It has not been suggested that there are in fact any novel features about the method of closing and sealing crypts.  At the hearing of the motion for a preliminary injunction it was vigorously contended that the way of ventilation and drainage shown in the patent is both new and useful.  It will be necessary to describe what that method is.  It is adapted to mausoleums of the usual construction.  In these the crypts are oblong stone or slate boxes, each of a size sufficient to contain a single burial casket.  The crypts are arranged one above the other.  One of the sides of each crypt is towards the interior of the mausoleum.  It is through this side when open that a casket is placed in the crypt.  The opposite side is parallel to the inner side of the external wall of the mausoleum.  The problem is to afford means of ventilating and draining the crypts into the open air, while preventing all escape of air or liquids from them into the interior of the mausoleum.  For the accomplishment of the former of such purposes, the patent directs that there shall be a space of some inches in breadth between the back walls of the crypts and the inner face of the exterior walls of the mausoleum.  In the back wall of each crypt there are vents, one or more on the plane of the upper surface of the bottom slab or floor of the crypt, and one or more near the plane of the under surface of its top or cover.  These vents open into the air space between the crypts and the mausoleum wall.  The wall is pierced with one or more openings at or near the surface of the ground and with one or more at the top of the wall.  It may also be desirable to have the ceiling fit closely upon the top of the crypts, and to leave between it and the roof proper an air space connecting with the air chambers between the crypts and the inner wall or walls of the mausoleum.  In order that none of the

air from the crypts shall escape into the interior of the mausoleum, it is necessary to close by a suitable slab or wall all possibility of communication between these air chambers and such interior.

At the final hearing it was practically admitted that there was nothing novel in this method of ventilating and draining the crypts. It was old at the time of the plaintiff's alleged invention.

At the argument at the bar the contention of the plaintiff practically resolved itself into the claim that it was new to combine with this method of ventilation the arrangement by which each shelf of each crypt was secured in the wall of the mausoleum.

The plaintiff is able to preserve the old ventilating system with its air chamber, and to secure the crypt shelves in the mausoleum walls by the simple expedient of cutting out of the rear edge of each shelf for the greater portion of its length a rectangular strip of the approximate width of the desired air chamber. This rectangular cut does not extend to either end of the shelf. There is, therefore, left at each end a projecting tongue which bridges the air chamber and is secured in the mausoleum wall. It is not shown that any burial vault arranged precisely in this way had ever been made before the complainant applied for his patent or had ever been theretofore described in print or otherwise.

It is admitted that no part of defendants' shelves extend into or across the air chambers. Complainant claims, however, to find in defendant's construction the equivalent of such shelf extension. It is admitted that in defendant's mausoleum there are a number of bricks wedged in the air chamber and between the back wall of the crypt and the inner surface of the outer wall. Such bricks are secured in place by plaster of paris, and, as complainant contends, in some instances at least by wiring and other means. Defendants deny that these bricks form any part of their scheme of construction. According to their contention, the bricks were placed where they were at the time the crypts were constructed for the purpose, and solely for the purpose, of holding the back walls in position while the workman was engaged in securing them permanently to the top and bottom shelves. The bricks had no other purpose, and, when that was accomplished, their usefulness was at an end. It is not necessary to spend time in inquiring what was the purpose of these bricks. Complainant has no right to a patent so broad that it will cover any means of securing the shelf of a crypt to the wall of a mausoleum or of supporting a shelf by a wall. He is not entitled to a decree in this case, unless his rights are infringed whenever the old method of ventilating and draining the crypts is used and the crypt shelves are secured in or to the mausoleum wall. He relies on the familiar rule that a new combination of several old things may be patentable.

It is not in any wise suggested in the evidence that the projecting tongues of the crypt shelves in complainant's device play any part in ventilating or draining the crypts. That system of ventilation will work just as well whether the shelves are secured in the back wall or not. While it was old, it might conceivably have been found objectionable in practice because the crypt shelves were not secured to the

mausoleum wall. If such had been the case, it could not have been made practically useful until some way of overcoming this difficulty had been provided.

I find nothing in the testimony to show that there ever had been any such difficulty. The securing of the shelf to the wall does not in any way contribute to the ventilating and draining of the crypts. The crypts are drained and ventilated precisely as they were in the prior art. The shelf is secured in the back wall in the way in which many shelves time out of mind have been secured in all sorts of structures. Under such circumstances, what the patentee claims is not a combination but an aggregation. It is difficult to say what may not amount to·invention. A want may have been long felt. Many may have attempted to meet it without success. Some one solves the problem. The solution then appears to be simplicity itself. For all that there may be invention. It would take clear and convincing evidence that the need had been appreciated and that others had tried to supply it before I could personally feel that there was any invention in securing a shelf to a wall in the way described in the patent in suit. In point of fact there is nothing in the record to suggest that any one had ever before tried and failed to accomplish what the patentee says he has done.

In view of the admitted state of the prior art, I can find nothing even remotely suggestive of invention in anything which the plaintiff claims to have done. One cannot appropriate to himself a part of the public·domain, unless he pays for it by contributing something to the world's store of useful knowledge. The case has thus far been dealt with upon the assumption that a mausoleum of a particular construction was something which when new and useful was patentable. For the reasons already stated, it becomes unnecessary to inquire whether this assumption is well or ill founded. The learned author of Walker on Patents (4th Ed.) p. 13, contends that the word "manufacture" as used in the patent law should be given a construction broad enough to cover everything made by the hands of man and not a machine or a composition of matter. The weight of the decided cases is to the contrary. Jacobs v. Baker, 7 Wall. 295, 19 L. Ed. 200; Fond du Lac County v. May, 137 U. S. 395, 11 Sup. Ct. 98, 34 L. Ed. 714; American Disappearing Bed Co. v. Arnaelsteen, 182 Fed. 324, 105 C. C. A. 40; International Mausoleum Co. v. Sievert (D. C.) 197 Fed. 936.

It is not expedient to attempt to draw the line between the kinds of things for which a patent may properly issue and those for which it may not, unless the drawing of such line is absolutely necessary to the proper decision of the case. There is no such necessity presented by this record.

The preliminary injunction heretofore granted will be dissolved and the bill of complaint dismissed.