F. F. McElhinney, appellant, v. John H. Harte,
APPELLEE.

FILED APRIL 16, 1915.  No. 18009.

1. Bills and Notes: FAILURE OF CONSIDERATION: SALE OF STOCK. Where
a promissory note is given for stock in a corporation then being
organized by the payee, in reliance upon the promise of the payee
to place in the treasury of the corporation it is organizing a cer-
tain sum of money and a bond of indemnity guaranteeing the
legality of the patents under which the corporation being organ-
ized is to operate, and the payee fails to either deposit the said
sum of money or furnish the said bond of indemnity, and the evi-
dence shows that such failure on the part of the payee renders
the stock in said corporation valueless, the consideration for the
note will be held to have totally failed.

2. ———: ———: ———. And where it further appears that, on
account of such failure, the maker of the note has refused to
take the stock, a judgment in his favor in an action on the note
will, in the absence of other reasons to the contrary, be affirmed.

3. Evidence examined and set out in the opinion *held* to sustain the
verdict and judgment.

APPEAL from the district court for Douglas county:
GEORGE A. DAY, JUDGE. *Affirmed.*

*William Baird & Sons,* for appellant.

*Myron L. Learned* and *Matters & Matters, contra.*

FAWCETT, J.

From a verdict and judgment of the district court for
Douglas county, in favor of defendant, in an action upon
three promissory notes, plaintiff appeals.

The three notes involved were for $6,500 each, maturing
on different dates. As each note matured, an action was
commenced thereon. After the commencement of the third
action, the three were combined and tried as one, and will
be referred to in the singular number as one action. The
petition alleges that defendant, being indebted to Thomas
H. Matters, of Omaha, executed and delivered to him the

notes in suit; that the notes were by Matters duly and legally assigned to plaintiff prior to their maturity; and that plaintiff is now the legal owner and holder thereof. The answer denies generally all allegations not expressly admitted; admits the making and delivery of the notes; but alleges that they were given for stock in the Nebraska Mausoleum Company, "a corporation promoted and organized by the plaintiff herein and the Iowa Mausoleum Company, of which this plaintiff is president;" that at the time the notes were given it was agreed by and between plaintiff, through his legal representative, and the defendant that plaintiff would on or before the 1st day of February, 1911, place in the treasury of the Nebraska company the sum of $49,000 in cash, for the use and benefit of the Nebraska company; that, in addition thereto, plaintiff agreed with defendant that the Iowa company and plaintiff would give an indemnity bond to the Nebraska company, protecting the latter against infringement of the patents purchased by it from plaintiff and the Iowa company; that defendant relied on these representations and agreements, and was thereby induced to subscribe for such stock and execute the notes; that "without the indemnity bond furnished, and without the amount of money deposited in the treasury of the company in accordance with the contract of the plaintiff, said stock is without value;" that with the said sum placed in the treasury and the indemnity bond furnished, the stock would be worth one hundred cents on the dollar. The reply denies the allegation that it agreed to place the sum of money named in the treasury and agreed to give the Nebraska company an indemnity bond; avers that the Iowa company sold the right to the use of the patent in the state of Nebraska to the Nebraska company and assigned the same to such company, and in the assignment agreed to indemnify the Nebraska company against any infringement of the patent right so sold and assigned to it; that said provision in the deed of assignment was the only agreement made by plaintiff or the Iowa company, and is full and complete indemnity to the Nebraska company against any and all liability

on account of attempted infringement of its patent right so assigned; that the Iowa company is fully solvent and financially responsible and able to make good its contract of indemnity; denies that plaintiff agreed to deposit the sum of money named; "and, by leave of court, for further reply to the answer as amended avers that said notes were given to Thomas H. Matters for stock of the Nebraska Mausoleum Company on representations made by Matters, and assigned by said Matters in payment of $17,800 which he owed the plaintiff, and the defendant is estopped to deny their validity." It is admitted that plaintiff holds the notes for the Iowa company, and that any defense which could be urged against that company can be urged against him.

The errors assigned are: (1) The court erred in refusing plaintiff's request for an instruction for judgment, for the reason that the only defense pleaded is failure of consideration, which was not sustained by any evidence; (2) the court erred in giving instruction No. 6; (3) the court erred in giving instruction No. 7; and (4) "the court erred in assuming by his instructions that the defense pleaded consisted of fraudulent statements of facts by which the defendant was induced to sign the notes, while, as shown by the pleading itself, as well as by the evidence, the defense was not that there was any fraudulent statement of fact which induced the making of the notes, but promises which had not been performed; and, there being no dispute as to the solvency and financial responsibility of the Iowa company, but abundant evidence of its financial ability, the court manifestly misconceived the defense pleaded." A consideration of the first assignment practically disposes of all. The evidence shows that the Iowa company was the owner for Iowa, Nebraska, and a number of other states, of patents 858,070 and 915,000; that it desired to dispose of its rights under those patents for the state of Nebraska, and in order to accomplish that purpose it undertook the organization of a Nebraska company. With this purpose in view, it sent its representative, a Mr. Little, to Nebraska to undertake such organization.

After arriving at Omaha, Mr. Little called at the office of Thomas H. Matters and took the matter up with him. The result of these negotiations was that Mr. Matters' co-operation was secured, and a contract was entered into between him and the Iowa company that he should enter into the management and incorporation of the Nebraska Mausoleum Company, with its headquarters at Omaha, and with a capital of $200,000. The contract (Exhibit 7) recites that the Iowa company is the owner of the patent rights for Nebraska, and that "the object of the organization of the Nebraska Mausoleum Company is to take over or purchase from the second party (the Iowa company) said territory, and to pay to the second party fifty-one (51) per cent. of its stock for all of the rights" in and to the patents for Nebraska. "And the first party (Matters) will also manage and control the sale of said stock in the state of Nebraska, and the second party has this day paid to the first party twenty-five hundred dollars ($2,500) as advance expenses in and about the organization of the said company and sale of said stock; and first party has agreed to sell said stock at par value, to the amount of one hundred and fifty thousand dollars ($150,000) within ninety (90) days from this date, and, in case he fails to do so, he agrees to return twenty-five hundred dollars without interest to the second party, in full cancelation of this agreement on his part. The question of commission for the sale of said stock is to be made by E. E. Little, representative of the party of the second part, and the party of the first part; it being fully agreed and understood between the parties hereto that fifty thousand dollars ($50,000) of stock shall be placed in the treasury and not sold, and the proceeds of forty-nine thousand dollars ($49,000) worth of said stock, so sold, shall be placed in the treasury. The balance of said money shall be paid to the parties of the second part for their fifty-one (51) per cent. of the said stock."

Little either had with him, or within a few days thereafter received from the Iowa company, a paper known as "Nebraska Prospectus" (Exhibit 13). This document contained the following language: "A mausoleum com-

pany is to be organized in the state of Nebraska by the
Iowa Mausoleum Company with a capital stock of $200,000.
The Iowa company will furnish two men experienced in the
business, who will be capable of looking after the details of
the business, and are experienced salesmen for crypts. The
Iowa company controls three patents covering this mode
of interment, and the use of the same in the state of Ne-
braska will be turned over to the Nebraska company."
This prospectus was used by Little, in conjunction with
Matters, in their efforts to secure subscribers for stock in
the Nebraska company. Matters and Little discussed the
question of commission for the sale of stock, which, by the
terms of the contract between Matters and the Iowa com-
pany, they were to adjust, and agreed between themselves
upon $30,000 as the amount which they ought to receive
for such commission, $10,000 of which was to go for ex-
penses, and the remaining $20,000 divided equally between
them. $150,000 worth of stock was not sold within 90
days, as provided by the contract, and thereupon Matters
returned to the Iowa company the $2,500 which had been
advanced him for expenses. Mr. Little remained in Omaha,
assisting Matters in securing subscriptions for stock. A
little later on, Doctor Shallenbarger appeared upon the
scene, and was introduced to defendant as the treasurer
of the Iowa company. Defendant testified that he had a
talk with Mr. Little and Doctor Shallenbarger, and that
they represented to him that there would be put in the
Nebraska company treasury $50,000 in cash for working
capital, and another $50,000 of the stock of the Nebraska
company which would be treasury stock, and also told him
that they would put up an indemnifying bond; that he
never received any stock in the Nebraska company from
either the Nebraska or the Iowa company for his notes,
and that he would not have executed the notes if the rep-
resentations, to which he testified, had not been made; that
he did not know Mr. Matters until he met him at the time of
the interview to which he testified. Mr. H. K. Burket, pres-
ident of the Nebraska company, testified, corroborating the
testimony of defendant as to his interview with Little and

Doctor Shallenbarger; that Shallenbarger was treasurer of the Iowa company; that Shallenbarger represented to defendant, before he subscribed for his stock, that they were going to organize a Nebraska company with $200,000 capital; that $50,000 cash was to go to the Nebraska company for working capital, and $50,000 was to be put in the treasury as treasury stock, and $100,000 was to go to the Iowa company for their patent, and that they were to give an indemnity bond; that the Iowa company did not place the $50,000 in the treasury, nor furnish an indemnity bond. He also testified that Mr. Matters was not a subscriber for stock in the Nebraska company, but that he was assisting Mr. Little of the Iowa company in promoting the Nebraska company. Mr. Little testified that he visited Omaha with the intention of promoting a company for the Iowa company, as their representative, and that he came to Omaha under the Iowa company's direction. In every essential detail he corroborates the testimony of defendant. Mr. Burket also testified, as did Mr. Pinney, secretary of the Nebraska company, and Mr. Goodell, and defendant himself, that, without the $50,000 in cash in the treasury for operating expenses, and the indemnity bond for the protection of the patents, the stock of the Nebraska company was valueless. Mr. Little also testified that he said to defendant that he and Matters were to sell $49,000 or $50,000 of stock, and the money was to go into the treasury of the Nebraska company; that they were employed to sell the stock, and that he told the persons to whom he sought to sell stock in the Nebraska company that he came to Omaha to organize a company for the Iowa company; that the Iowa company sent him $50 a week; that his purpose in coming to Omaha originally was to organize a company on behalf of the Iowa company, and that he supposed he showed the prospectus to defendant, and that he talked with defendant, prior to the time of his subscription, respecting the prospectus.

In the light of the above testimony, it is idle to claim that Mr. Matters was not the duly authorized agent and representative of the Iowa company in everything he did

in relation to the organization of the Nebraska company and the soliciting of sales of stock in such company. In taking the notes from defendant, payable to himself, he was taking them for the Iowa company. This being true, all transactions between the Iowa company and Matters, in relation thereto, were matters with which defendant had no concern. He gave the notes in controversy for his subscription to stock in the Nebraska company, under the statement made by the Iowa company's representatives that the Nebraska company was being organized by the Iowa company, and that the Iowa company would place in the treasury of the Nebraska company for operating expenses $50,000 in cash and $50,000 worth of treasury stock, and furnish the Nebraska company an indemnifying bond as a guaranty of the validity of their patents and a protection against infringement thereof. It failed to deposit either the money or the bond. That failure, under the testimony of the witnesses, rendered the stock in the Nebraska company valueless. This testimony is not controverted. There was, therefore, a total failure of consideration for the notes. But it is urged by plaintiff that the general principle is that the failure to perform promises which relate to future obligations does not constitute failure of consideration of a note. There are cases which, under certain circumstances, so hold; but, as applied to the facts shown in the case at bar, we do not think a case can, or ever will be found, to sustain plaintiff's contention. It has been held that, if the consideration paid for a note is of the value of a peppercorn, it will support the note. If I sell, and deliver the thing sold, the value may not be material; but, if I fail to deliver part of the thing sold, and the nondelivery of that part renders the part which I do deliver valueless, the consideration fails. I must deliver the whole of the "peppercorn." If the mere promise to put the money in the treasury and furnish an indemnity bond is a sufficient consideration to entitle plaintiff to recover upon the notes, then, if A gives his note to B for $1,000, relying upon B's promise to send him the money the next day, and B never sends it, his *promise* to send it

would be sufficient to entitle him to recover on the note. This is not the law. Nor will it aid B in an attempt to recover upon the note that he is a man of large means, and .that A could therefore recover the $1,000 from him in an action therefor. The consideration which defendant was to receive for the note has never been paid or furnished, and, if he is now compelled to pay the notes, the Iowa company will receive $18,500, plus interest, for nothing. It is interesting to note that the necessity. for requiring an indemnity bond will appear from an examination of *International Mausoleum Co.* (under whom the Iowa company held its rights under the patents involved) *v. Sievert,* 197 Fed. 936, where the United States district court for the northern district of Ohio held one of the patents, under which the Iowa company was operating, viz., No. 858,070, void.

In the light of the views above expressed, the court did not err in giving instructions 6 and 7, covered by the second, third and fourth assignments. We are unable to discover any theory under the law, or in harmony with honesty and fair dealing, which would support any other judgment than that rendered.

· AFFIRMED.

BARNES, ROSE and HAMER, JJ., not sitting.